MAY JUNG, LLP
Je Yon Jung (SBN: 329774)
333 City Blvd. West
Suite 327
Orange, CA 92868
818-869-6476 (direct)
202-618-8282 (fax)
jeyon@mayjung.com
*Attorney for Plaintiff Janeen Hughes*

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JANEEN HUGHES,** *as Personal Representative of the Estate of ROBERT MONROE HUGHES, Deceased,*<br><br>　　*Plaintiff,*<br><br>v.<br><br>**PADI WORLDWIDE CORP., PADI AMERICAS, INC., AMBERGRIS DIVERS, and DOES 1 through 60,** *Inclusive*<br><br>　　*Defendants.* | COMPLAINT FOR DAMAGES UNDER THE DEATH ON THE HIGH SEAS ACT, GENERAL MARITIME LAW, AND OTHER APPLICABLE LAW |

## COMPLAINT

PLAINTIFF'S ORIGINAL COMPLAINT

1

2

# <u>CONTENTS</u>

**I.    INTRODUCTION** ........................................................ 1

**II.   PARTIES** ............................................................... 6

    A.    Plaintiff Janeen Hughes ........................................ 6

    B.    The PADI Defendants ........................................... 7

    C.    The Ambergris Defendants ...................................... 8

    D.    Vicarious Liability ............................................. 9

**III.  JOINT VENTURE BETWEEN DEFENDANTS** ................. 11

**IV.   JURISDICTION AND VENUE** ............................... 12

**V.    JOINT ENTERPRISE** ........................................ 13

**VI.   RIGHTS AND REMEDIES** .................................. 14

**VII.  JOINT AND SEVERAL LIABILITY** ........................ 15

**VIII. FACTUAL ALLEGATIONS** .................................. 15

    A.    Mr. Hughes' Last Dive ......................................... 16

    B.    Defendants Failed to Adequately Supervise Mr. Hughes ............. 19

    C.    PADI's Influence and Control Over Ambergris .................... 20

**IX.   CAUSES OF ACTION** ........................................ **24**

**X.    PRAYER FOR RELIEF** ...................................... **62**

---

PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff JANEEN HUGHES ("Plaintiff"), as Personal Representative of the Estate of ROBERT MONROE HUGHES ("Mr. HUGHES"), deceased, brings this action for damages by and through undersigned counsel and sues Defendants PADI WORLDWIDE CORP., PADI AMERICAS, INC. (together, "PADI"), AMBERGRIS DIVERS ("AMBERGRIS"), and DOES 1 through 60, inclusive. In support, Plaintiff alleges as follows:

## I.    INTRODUCTION

1.    Mr. HUGHES died during a routine scuba dive in Belize while under the direct supervision of AMBERGRIS, its PADI-trained staff and PADI. He died from carbon monoxide ("CO") poisoning, which was induced during a scuba dive (which AMBERGRIS organized) by tainted breathing gas (which AMBERGRIS provided to Mr. HUGHES). But for the replete failures of AMBERGRIS and its staff (DOES 1 through 60), Mr. HUGHES would be alive today.

> Discover the ultimate scuba diving experience in Belize with Ambergris Divers in San Pedro. Perfect for beginners and experts, our PADI-certified dive operators guide you through the vibrant Caribbean Sea, exploring coral formations, tropical fish, shipwrecks, and more.[1]

2.    Through the patent and negligent failures of AMBERGRIS, PADI and their staff, they provided Mr. HUGHES a scuba tank and breathing gas that was contaminated with lethal CO gas—an odorless and tasteless toxin that induces

---

[1] Ambergris Divers, *available at* https://ambergrisdivers.com/ (last visited May 27, 2025).

cognitive disfunction, unconsciousness, and death once absorbed into the bloodstream.



*We have diving equipment available for rental also, so if you have no diving gear have no fear![2]*

3.    The AMBERGRIS staff and PADI failed to provide adequate supervision to Mr. HUGHES, who succumbed to CO poisoning during the dive and lost consciousness underwater. His dive partner (a fellow AMBERGRIS guest) found him on the ocean floor and brought him to surface. Rescuers—mainly other resort guests—towed Mr. HUGHES aboard the AMBERGRIS vessel.

4.    The AMBERGRIS staff and PADI failed to render proper aid to Mr. HUGHES. Tellingly, the PADI-trained and PADI-certified AMBERGRIS divemaster, who was charged with Mr. HUGHES' safety and supervision during the

---

[2]    Ambergris Divers, available at https://ambergrisdivers.com/diving-equipment-and-facilities/ (last visited May 27, 2025).

dive, was already on board. His AMBERGRIS scuba tank was also contaminated with deadly CO, and he lay unconscious on the dive deck next to Mr. HUGHES.

5. A fellow guest initiated CPR on Mr. HUGHES. However, the AMBERGRIS vessel, approved by PADI, lacked the required automated external defibrillator ("AED"), medications, or working oxygen administration system[3] to revive him. Then, in a last bout of negligence, the AMBERGRIS' dive vessel's engine failed during the evacuation to shore, substantially stranding Mr. HUGHES on the ill-equipped vessel and delaying proper medical treatment.

6. Each of these failures conflicts directly with AMBERGRIS' marketing and promises to guests like Mr. HUGHES:

> Ambergris Divers prides in customizing its equipment and diving boats to the elements of the services it offers. Our fleet of diving boats provides comfort and safety in getting around our Caribbean waters and ease of movement on your diving and snorkeling adventures. Our care for detail is what sets us apart.

> Ambergris Divers prioritizes safety with all vessels outfitted with the necessary amenities including communication equipment, life vests, oxygen, and comprehensive first aid gear. All of our boats are duly registered and licensed by the Belize Port Authority, registered and specified within our tour operators license issued by the Belize Tourism Board, as well as registered with the Hol Chan Marine Reserve, which guarantees our customers that the strictest requirements have been met for your convenience and safety.

---

[3] Oxygen is the most immediate and appropriate treatment for any diving accident involving gas physiology. It is especially important in the instance of carbon monoxide poisoning, given the way in which carbon monoxide blocks the blood's ability to transport oxygen. All dive vessels should be equipped with supplemental oxygen kits. Remarkably, the AMBERGRIS dive vessel did not have one onboard.

> We pride ourselves on the comfort our diving boats provide. We ensure that you arrive at your diving location safely and in a timely fashion. Safety is a significant concern and we do our best to have all safety equipment on board.[4]

7.    Doctors confirmed Mr. HUGHES' death at the hospital later that day. The local medical examiner attributed Mr. HUGHES' death to inhalation of CO during his last scuba dive—which took place under the total control and supervision of AMBERGRIS and its PADI-trained staff and PADI.

8.    AMBERGRIS, pursuant to a joint venture with PADI, is a PADI 5 Star facility, PADI's highest rating for safety, service and oversight. AMBERGRIS' website states:

> Ambergris Divers, a signature 'Dive Safe', and personable protocol precedes us and has established Ambergris Divers into a preferred Dive Tour operator in Ambergris Caye, Belize. **As a PADI 5 Star Dive Center committed to the industry's highest standards**, Ambergris Divers' [sic] enhances your experiences onboard and below, as we cater to experienced and novice enthusiasts.
>
> …**our selected staff, with the highest training standards**… [5]

9.    PADI promotes its 5 Star facilities as follows:

---

[4]    Ambergris Divers, *available at* https://ambergrisdivers.com/diving-equipment-and-facilities/diving-vessels-diving-boats/ (last visited May 27, 2025).

[5] Ambergris Divers, *available at* https://ambergrisdivers.com/ (last visited May 27, 2025) (emphasis added).



Safety is a fundamental aspect emphasized by PADI in its 5 Star Dive Centers. These centers are recognized for their commitment to maintaining high safety standards, ensuring that divers can enjoy their experiences with confidence.

**Safety Emphasis in PADI 5 Star Dive Centers**

- **Adherence to PADI Standards**: PADI 5 Star Dive Centers are required to follow all recommended practices and standards set by PADI. This includes employing certified PADI Professionals who are trained to prioritize diver safety in all activities.
- **Regular Monitoring and Compliance**: These centers are subject to regular checks by PADI Regional Managers to ensure compliance with safety and service standards. PADI maintains the authority to revoke the 5 Star status if a center fails to meet these stringent requirements.
- **Emergency Preparedness**: PADI 5 Star Dive Centers are expected to have comprehensive emergency plans in place. This includes having safety equipment such as first aid kits and emergency oxygen readily available, and ensuring that staff are trained to handle potential diving emergencies effectively.
- **Quality Assurance**: By maintaining high training standards and providing ongoing education opportunities, these centers ensure that both instructors and divers are well-prepared, reducing the risk of accidents and enhancing overall safety.

PLAINTIFF'S ORIGINAL COMPLAINT
PAGE 5 OF 62

1

2

3

> Choosing a PADI 5 Star Dive Center means selecting a facility that places a strong emphasis on safety, professionalism, and quality training, providing peace of mind for divers at all levels.[6]

4

## II.    PARTIES

5

**A.    Plaintiff Janeen Hughes**

6

7

8

9

10

11

10.    **Plaintiff, JANEEN HUGHES** (herein "JANEEN HUGHES" or "Plaintiff"), is the duly appointed, qualified, and acting Personal Representative of the Estate of ROBERT MONROE HUGHES, deceased, pursuant to Letters Testamentary issued to her by the Clerk of Sedgwick County District Court, State of Kansas on December 5, 2024. Plaintiff files this lawsuit in her capacity as Personal Representative of the Estate of ROBERT MONROE HUGHES.

12

13

11.    At all times material, the survivors of ROBERT MONROE HUGHES are as follows:

14

15

16

17

18

| Wife of Decedent: | JANEEN HUGHES |
|---|---|
| Daughter of Decedent: | MELISSA ANN GERLACH |
| Daughter of Decedent: | MEGAN HUGHES |
| Daughter of Decedent: | MOLLY JANE HAGEMAN |

19

20

At all times material, JANEEN HUGHES, Melissa Ann Gerlach, Megan Hughes, and Molly Jane Hageman are all of the age of majority. At all times material, the

21

22

23

---

[6] PADI 5 Star Facilities, available at
https://blog.padi.com/2023/08/21/why-choose-a-padi-5-star-dive-center/ (last visited May 27, 2025).

24

25

survivor, JANEEN HUGHES, wife of Mr. HUGHES, was dependent on the Decedent, ROBERT MONROE HUGHES, for inheritance, support and/or services as alleged herein.

12.     The Plaintiff, JANEEN HUGHES, is and was at all times material, a resident of Sedgwick County, Kansas, and is the Personal Representative of the Estate of ROBERT MONROE HUGHES, (herein "ROBERT MONROE HUGHES", "Mr. HUGHES" or "Decedent") who died testate, on or about June 14, 2024, in international waters offshore Belize.

13.     At all times material, Mr. HUGHES was lawfully married to the Plaintiff and was a resident of Sedgwick County, Kansas.

14.     At all times material, Mr. HUGHES was a resident of Sedgwick County, Kansas and a participant in a scuba excursion organized and conducted by Defendants.

**B.     The PADI Defendants**

15.     PADI (or the Professional Association of Diving Instructors) is the most recognized dive training organization worldwide. It boasts over 30 million certified divers and counting, allegedly by "rigorously trained" instructors to ensure their safety.



# The Way the World Learns to Dive

PADI (the Professional Association of Diving Instructors) is the most recognized dive training organization worldwide with over 30 million divers and counting. PADI Dive Instructors undergo rigorous training to ensure your scuba certification class is fun and safe.[7]

---

[7] PADI, *available at* www.padi.com (last visited May 27, 2025).

Plaintiff refers to Defendants PADI WORLDWIDE CORP. and PADI AMERICAS, INC. collectively as "PADI" or "the PADI Defendants" throughout this Complaint.

16.    **Defendant PADI WORLDWIDE CORP.** is a California corporation with its principal place of business in California. PADI regularly conducts business within the State of California and within the jurisdiction of this Court.

17.    **Defendant PADI AMERICAS, INC.** is a California corporation with its principal place of business in California. PADI regularly conducts business within the State of California and within the jurisdiction of this Court.

**C.    The Ambergris Defendants**

18.    **Defendant AMBERGRIS DIVERS** ("AMBERGRIS"), a PADI 5 Star facility, is a scuba diving facility located in Belize. AMBERGRIS at all relevant times maintained continuous and systematic contacts with the forum and purposefully availed itself of doing business therein, including (without limitation) advertising. Plaintiff's claims arise out of and relate to those contacts. Moreover, at all relevant times, AMBERGRIS maintained an ongoing joint venture with PADI based in California within the jurisdiction of this Court.

19.    **Defendants Does 1 through 60:** The true names and capacities of the Defendants sued herein as DOES 1 through 60, inclusive, are unknown to the Plaintiff who therefore sues said Defendants by such fictitious names.  Plaintiff is informed, believes, and on that basis alleges that each of the DOE Defendants, as well as the named Defendants, are responsible in some manner for the events, happenings and damages alleged herein. Plaintiff will seek leave of Court to amend

this complaint to allege the true names and capacities of the DOE Defendants when ascertained.

20.    Plaintiff is informed and believes, and thereon alleges, that at all times mentioned herein, Defendants, and each of them, including DOES 1 through 60, inclusive, were the agents, servants, employees and/or joint venturers of their co-Defendants and were as such acting within the course, scope and authority of said agency, employment and/or venture and that each and every Defendant, as aforesaid, when acting as a principal, was negligent in the selection and hiring of each and every other Defendant as an agent, employee, and/or joint venturer.

21.    Plaintiff is informed and believes, and thereupon alleges, that at all times relevant hereto all of the acts complained of herein by Plaintiff against said Defendants were done and performed by said Defendants by and through their duly authorized agents, servants and employees, and each of them, all of whom were at all times mentioned herein acting within the course, purpose and scope of said agency, service, employment and/or joint venture.

**D.    Vicarious Liability**

22.    At all material times, Defendants AMBERGRIS and DOES 1 through 60, inclusive, through their agents, servants and/or employees, were involved in a joint venture with PADI.

23.    At all material times, PADI, through its agents, servants, and/or employees:

  a. Had a community of interest with AMBERGRIS and DOES 1 through 60, inclusive;

b. Had joint control or right of control with AMBERGRIS and DOES 1 through 60, inclusive; and/or

c. Acted in the course and scope of its joint venture with AMBERGRIS and DOES 1 through 60, inclusive.

24.    At all material times, the negligence, gross negligence and willful and wanton acts and/or omissions of AMBERGRIS and DOES 1 through 60, inclusive, was and is, by virtue of the aforementioned joint venture, imputable to PADI.

25.    At all material times, PADI is, by virtue of the aforementioned joint venture, liable for its own negligence and vicariously liable for the negligence, gross negligence and willful and wanton acts and/or omissions of AMBERGRIS and DOES 1 through 60, inclusive.

26.    Plaintiff is informed and believes, and thereon alleges, that at all times mentioned herein, Defendants, and each of them, were the agents, servants, employees and/or joint venturers of their co-Defendants, and were, as such, acting within the course, scope and authority of said agency, employment and/or venture and that each and every Defendant, as aforesaid, when acting as a principal, was negligent and grossly negligent in the selection and hiring of each and every other Defendant as an agent, employee and/or joint venturer.

27.    The General Maritime Law of the United States recognizes and applies the doctrine of *respondeat superior* and agency. Accordingly, PADI is responsible for its own negligence, gross negligence and willful and wanton acts and/or omissions as described herein and in addition for the acts and/or omissions constituting negligence, gross negligence and willful and wanton acts and/or

omissions of its officers, employees, agents and servants as well as contractors over which it had operational control as occurred and as described herein.

### III.    JOINT VENTURE BETWEEN DEFENDANTS

28.    AMBERGRIS and PADI directly recruited, hired, placed, evaluated, managed, and profited from the operations of the dive facility and vessel.  Selection of the employees and master of the vessel; payments (including wages, maintenance and cure); hiring/firing of the employees and master of the vessel; and control over the vessel operations and management was at all times directly, negligently and grossly negligently exercised by AMBERGRIS and PADI and their agents/employees/representatives.

29.    AMBERGRIS and PADI acted by and through various corporate shells for the business of AMBERGRIS, including the operation of the vessel and employment of its master and crew.  Its corporate alter egos functioned solely as fictitious conduits for the business of AMBERGRIS and PADI.   In fact, the operations and management of the vessel and its crew were negligently and grossly negligently carried on by AMBERGRIS and PADI and their agents/employees/representatives for the sole benefit and at the direction of AMBERGRIS and PADI.   Pursuant to the federal general maritime law, AMBERGRIS and PADI may not use the corporate fiction to perpetuate a fraud or to so dominate the business of the corporate shells that the alter ego shells actually carry on the business of AMBERGRIS and PADI, and no legitimate business of their own.

30.    AMBERGRIS and PADI acted as joint venturers in the operations and management of AMBERGRIS.  As joint venturers, AMBERGRIS and PADI had at all material times a financial relationship to each of the others benefit, shared profits/losses such that each is liable for the responsibilities and liabilities of the other, including for the operations and negligent, grossly negligent and willful and wanton tortuous conduct of the other.

31.    At all times material, PADI acted on behalf of AMBERGRIS such that its actions including, without limitation, negligence, gross negligence and willful and wanton acts and/or omissions on behalf of one of these entities are indistinguishable from its actions on behalf of the other.

## IV.    JURISDICTION AND VENUE

32.    This is an action for maritime wrongful death and survival damages brought pursuant to the Death on the High Seas Act ("DOHSA"), 46 U.S.C. § 761, *et seq.*, the general maritime law, and all other applicable United States, California and Belize law. This Court has subject matter jurisdiction over this matter pursuant DOSHA and the General Maritime Law of the United States and 28 U.S.C. § 1333.

33.    This Court may properly exercise personal jurisdiction over the PADI Defendants because PADI maintains continuous and systemic business contacts in California, purposefully avails itself of the privilege of conducting business activities in California, and Plaintiff's damages arise out of or relate to those activities.

34.    This Court has personal jurisdiction over AMBERGRIS because it conducts continuous and systemic business in California, purposefully availed itself

of the privilege of conducting business activities in California and Plaintiff's damages arise out of or relate to those activities.

35.    All of the within actions are based on claims arising under federal laws within the meaning of Rule 4(h)(2) of the Federal Rules of Civil Procedure. At all material times the Defendants named herein were and continue doing business with substantial, systemic and continuous nationwide business contacts and each purposefully availed itself of doing business within the United States and jurisdiction of this Court within the meaning of Rule 4(h)(2) of the Federal Rules of Civil Procedure.

36.    The Court's exercise of jurisdiction over the parties is reasonable; the maintenance of this suit does not offend traditional notions of fair play or substantial justice.

37.    Venue is proper before this Court pursuant to 28 U.S.C. §1391(b)(3) since one of the Defendants reside in this District and/or maintain their principal place of business within this District such that one or more of the Defendants is subject to this Court's personal jurisdiction.

## V.    JOINT ENTERPRISE

38.    At the time of the incident on June 14, 2024, the management of Defendants' actions, failures, negligence, gross negligence and willful and wanton acts and/or omissions identified in the following Causes of Action that caused Mr. HUGHES to perish, constituted a joint enterprise by and between PADI WORLDWIDE CORP., PADI AMERICAS, INC., AMBERGRIS DIVERS, and DOES 1 through 60, inclusive, as follows:

a. An agreement to work collectively to organize, plan, market and operate dive excursions;

b. For a common purpose of selling and operating dive excursion trips;

c. For a common commercial, financial interest and/or profit motive among the Defendants; and

d. With each Defendant sharing control and operation and/or management of the business.

39.    Because Defendants were engaged in a joint enterprise, all Defendants are jointly and severally liable for all negligent, grossly negligent and willful and wanton acts and/or omissions of each member of the joint enterprise acting within the course and scope of the joint enterprise.

40.    As a direct and proximate result of the negligent, grossly negligent and willful and wanton acts and/or omissions of Defendants occurring within the course and scope of a joint enterprise, Mr. HUGHES was caused to perish and Plaintiff suffered the damages identified herein for which Defendants are responsible.

## VI.    RIGHTS AND REMEDIES

41.    Plaintiff, JANEEN HUGHES, in her capacity as Personal Representative of the Estate of ROBERT MONROE HUGHES, files the within action for the benefit of the Estate of ROBERT MONROE HUGHES and claims:

a. All the pecuniary damages provided for under the "Death on the High Seas Act" ("DOHSA"), 46 U.S.C. App. §§ 764-768;[8] and

b. All the pecuniary and non-pecuniary damages provided for under the law of Belize which, pursuant to Section 4 of DOHSA, 46 U.S.C. App. § 764, is properly a right of action given by the law of a foreign country.

## VII.    JOINT AND SEVERAL LIABILITY

42.    Defendants are jointly and severally liable under the General Maritime Law of the United States for the maritime wrongful death damages in this case.

## VIII.    FACTUAL ALLEGATIONS

43.    On or about June 14, 2024, ROBERT MONROE HUGHES died during a routine scuba dive in the waters off San Pedro, Belize. He succumbed to carbon monoxide ("CO") poisoning.

44.    At the time of the accident, Mr. HUGHES was a guest of Defendant AMBERGRIS, which is located in San Pedro Belize. Mr. HUGHES was a passenger aboard an AMBERGRIS diving vessel under the guidance of PADI and AMBERGRIS staff. Mr. HUGHES was utilizing a scuba tank filled with breathing gas—a compressed air product manufactured, marketed, packaged, monitored and provided to Mr. HUGHES by PADI, AMBERGRIS and its staff.

---

[8] DOHSA is a federal statute enacted in 1920 in partial response to the Titanic disaster. DOHSA provides a cause of action for the families of individuals who die on the high seas as a result of negligence or wrongful acts.

## A. Mr. Hughes' Last Dive

45.    At the time of the accident, Mr. HUGHES was utilizing a scuba tank, which AMBERGRIS owned, filled with breathing gas, and rented to Mr. HUGHES. AMBERGRIS and DOES 1 through 60, inclusive were at all times in exclusive control of the scuba tank and its lethal contents.[9]

46.    Mr. HUGHES purchased the gas contained within the scuba tank he rented from AMBERGRIS, but had no role in filling the tank or manipulating the breathing gas. The gas was manufactured, marketed, packaged, monitored and provided to Mr. Hughes by PADI, AMBERGRIS and DOES 1 through 60, inclusive.

47.    Mr. HUGHES unknowingly descended for his last dive breathing from the AMBERGRIS tank, which was contaminated with lethal CO.

48.    The dive was supervised by an AMBERGRIS divemaster—a certified PADI professional trained and certified by PADI to supervise divers in the water and

---

[9] Carbon monoxide ("CO") is a colorless, tasteless, odorless gas. CO formation is generally caused by incomplete combustion of carbon compounds; common sources include fire, engine exhaust, and faulty furnaces. CO binds to hemoglobin ("Hb") in the blood with high affinity, forming COHb. Exposure to levels as low as 10 ppm of CO can lead to detectable COHb levels of approximately 2%. CO competes with oxygen for binding to Hb and, by displacement of oxygen, reduces oxygen carrying capacity. CO binding to Hb also stabilizes the relaxed, high-affinity quaternary state of Hb (known as R-state), increasing the affinity for oxygen of other sites within the Hb tetramer, and further reducing oxygen release and delivery. In addition to Hb, CO binds to other heme-containing proteins, including myoglobin in heart and skeletal muscle, mitochondrial cytochrome c oxidase (COX; complex IV), and others. Severe acute CO poisoning is characterized by cognitive dysfunction, unconsciousness, and ultimately death. *See* Rose JJ, *et al.*, *Carbon Monoxide Poisoning: Pathogenesis, Management, and Future Directions of Therapy*. Am. J. Respir. Crit. Care. Med. (Mar. 1, 2017).

employed by AMBERGRIS. The divemaster's role was at all times to ensure the safety of Mr. HUGHES and other guests.

49.    Ensuring the purity of breathing gases is vital to diver safety. Contaminants like carbon monoxide, oil vapors, or incorrect oxygen levels can have severe consequences underwater. Therefore, dive centers must strictly regulate and control the manufacturing of and filling of SCUBA tanks with breathing gas. PADI places significant emphasis on the safety and quality of breathing gases and offers a training course for such. This, when conducted properly, monitored and overseen, ensures that those responsible for preparing breathing gases are competent and knowledgeable, enhancing diver safety. PADI expects its facilities to adhere to local regulations and industry best practices. This includes regular maintenance of compressors and filtration systems, monitoring to ensure no exposure to CO in the form of exhaust fumes, or compressor/filters malfunction as well as air/nitrox quality testing to ensure the purity of breathing gases. Under pressure (i.e., during a dive), CO's effects are magnified, making even low concentrations dangerous. Thus, the allowable level of carbon monoxide (CO) in scuba breathing gas is extremely low due to its high toxicity, even at small concentrations. PADI requires that its affiliated dive centers follow a 5 ppm threshold recommended by EN 12021 (European Standard for Breathing Air) and others. The tank of compressed air and/or Nitrox product sold to Mr. HUGHES by PADI and AMBERGRIS contained a lethal CO level far more than 5 ppm.

50.     Shortly into the dive, the AMBERGRIS and PADI divemaster, who was breathing the same contaminated gas in his scuba tank,[10] became ill as a result of the CO contamination. The divemaster aborted the dive and two other members of the group began an emergency ascent with him. The divemaster lost consciousness on the surface and was subsequently hospitalized. He was therefore unable to assist Mr. HUGHES in any manner. AMBERGRIS had no other employees or diving professionals in the water to supervise or aid Mr. HUGHES.

51.     Mr. HUGHES lost consciousness sometime during his dive as a result of the contaminated breathing gas. His dive buddy (another AMBERGRIS guest) found him lying on the ocean floor, unconscious. This diver brought Mr. HUGHES to the surface and towed him to the AMBERGRIS vessel. Another rescuer initiated CPR—the same rescuer who had performed CPR on the AMBERGRIS and PADI divemaster shortly beforehand. However, the AMBERGRIS vessel, sanctioned and approved by PADI, was not equipped with the required AED, medications, or working supplemental oxygen administration system that could have saved Mr. HUGHES' life.

52.     The AMBERGRIS vessel attempted to carry Mr. HUGHES to shore for medical assistance. However, the vessel's engine failed during the evacuation to shore, substantially delaying the trip contributing to Mr. HUGHES' death.

---

[10] The divemaster's scuba tank, like that which Mr. HUGHES was using, was also owned, maintained, monitored and filled by AMBERGRIS, PADI and DOES 1 through 60, inclusive.

PLAINTIFF'S ORIGINAL COMPLAINT
PAGE 18 OF 62

53.     Doctors pronounced Mr. HUGHES deceased at the hospital later that day. The local medical examiner attributed Mr. HUGHES' death to inhalation of carbon monoxide during his last scuba dive with AMBERGRIS.

**B.     Defendants Failed to Adequately Supervise Mr. Hughes**

54.     The scuba tank Mr. HUGHES utilized during his last dive was owned, maintained, monitored and filled by AMBERGRIS, PADI and DOES 1 through 60, inclusive. It was, at all relevant times, in AMBERGRIS' care, custody, possession, and control until sold to Mr. HUGHES.

55.     AMBERGRIS' tank was contaminated with toxic levels of carbon monoxide gas. Mr. HUGHES played no role in filling, storing, monitoring or maintaining the tank—such was the exclusive domain of AMBERGRIS, PADI and DOES 1 through 60.

56.     AMBERGRIS, PADI and DOES 1 through 60, inclusive, knew (or, at the least, should have known) prior to the diving excursion that its tanks, including the tanks provided to Mr. HUGHES and the divemaster, were contaminated with toxic levels of carbon monoxide. Nevertheless, AMBERGRIS, PADI and DOES 1 through 60, inclusive, failed to prevent the use of those tanks.

57.     Moreover, AMBERGRIS, PADI and DOES 1 through 60, inclusive, knew (or, at the least, should have known) of the importance of having onboard medical supplies, including (but not limited to) an AED and supplemental oxygen. No such tools were available on the AMBERGRIS vessel.

58.     Furthermore, AMBERGRIS, PADI and DOES 1 through 60, inclusive, knew (or, at the least, should have known) that maintenance and upkeep for a diving

vessel is paramount because of the potential need to rush a diver experience a medical emergency to shore. However, the AMBERGRIS vessel was not properly maintained and indeed broke down during the most crucial minutes of the attempted rescue of Mr. HUGHES.

**C.    PADI's Influence and Control Over Ambergris**

59.    At the time of the accident, AMBERGRIS, DOES 1 through 60, inclusive, and their employees aboard the AMBERGRIS vessel and at the dock held themselves out to be PADI trained and certified diving instructors and divemasters acting as servants, agents and employees of AMBERGRIS and PADI and through their actions, omissions and services acted within the course and scope of the employment, agency and joint venture relationship between AMBERGRIS and PADI.

60.    At all material times, AMBERGRIS and DOES 1 through 60, inclusive, were held out to be a PADI 5 Star facility, thus a full-service scuba diving enterprise and training facility open to the general public and engaged in the business of providing scuba training, instruction, equipment (including tanks), compressed air and/or nitrox products and supervision services to include dive vessel services, passage and transportation for paying passengers to, from, and during scuba diving excursions directed and controlled by PADI, AMBERGRIS and DOES 1 through 60, inclusive.

 

[11]

61.    At all material times, AMBERGRIS was held out to be an agent and/or servant and/or joint venturer of Defendant, PADI, and a PADI certified 5 Star scuba facility.

62.    At all material times, PADI certified, via financial agreement, AMBERGRIS and DOES 1 through 60, inclusive, as PADI 5 Star facilities warranting a minimal level of professional service including, without limitation, an assurance of the quality of the compressed air and/or nitrox product provided by AMBERGRIS, PADI and DOES 1 through 60, inclusive, and the competence of the employees, agents and servants of AMBERGRIS, PADI and DOES 1 through 60, inclusive.

63.    At all material times, AMBERGRIS, PADI, DOES 1 through 60, inclusive, their employees, agents, servants, divemasters and scuba instructors failed to provide the minimal level of competence required of a PADI 5 Star facility and pursuant to industry standards.

---

[11]  Ambergris Divers Facilities, available at https://ambergrisdivers.com/diving-equipment-and-facilities/ (last visited May 27, 2025).

64.    On or about June 14, 2024, Mr. HUGHES perished while on a scuba diving excursion offered, overseen, created, supervised and provided solely by the Defendants and due to the negligent acts and/or omissions of Defendants and their agents/employees, as well as the gross negligence and willful and wanton behavior of the Defendants and their agents/employees, all of which were in the privity and knowledge of the owner of AMBERGRIS and PADI.

65.    AMBERGRIS, pursuant to a joint venture with PADI, is a PADI 5 Star facility, PADI's highest rating over safety and service. AMBERGRIS' website states:

> Ambergris Divers, a signature 'Dive Safe', and personable protocol precedes us and has established Ambergris Divers into a preferred Dive Tour operator in Ambergris Caye, Belize.  As a PADI 5 Star Dive Center committed to the industry's highest standards, Ambergris Divers' enhances your experiences onboard and below, as we cater to experienced and novice enthusiasts.

> …our selected staff, with the highest training standards…[12]

66.    PADI has represented publicly that it has and ensures that its 5 Star facilities have a superior safety record and maintains the highest standards with respect to designing its courses, training its instructors, and operating and maintaining its facilities and associated employees to ensure that all participants have a safe, fun experience. PADI promotes through its PADI website and otherwise

---

[12] Ambergris Divers, available at https://ambergrisdivers.com/ (last visited May 27, 2025).

through AMBERGRIS as offering an attractive and safe option for tourists, vacationers and others who wish to explore the underwater world.

67.    On information and belief, PADI entered an agreement with AMBERGRIS to assist AMBERGRIS in operating a PADI-sponsored 5 Star facility. This agreement allowed PADI to exclusively control, supervise, operate and manage AMBERGRIS as a satellite location and designated California as the jurisdiction to resolve disputes. The agreement created an arrangement that permitted PADI to operate and control PADI satellite locations in foreign countries, such as AMBERGRIS in Belize, with the assistance of local residents or companies. The PADI 5 Star satellite locations, including AMBERGRIS, are strictly required to use only PADI products (which they could not own) and comply with PADI's operation and safety manuals and other policies and procedures. PADI regularly visited, evaluated and supervised the satellite locations', including AMBERGRIS', activities to ensure strict compliance and also required specific record keeping and reporting. The satellite locations, including AMBERGRIS, were required to use marketing and advertising materials supplied by PADI. The satellite locations, including AMBERGRIS, had to pay a portion of the profits generated by their dive excursion operations to PADI and, upon information and belief, they were included as additional insureds or otherwise shared insurance coverage under PADI's liability insurance programs.

68.    On information and belief, PADI controlled and operated satellite locations, including AMBERGRIS, via the PADI operating and safety procedures including, without limitation, continual inspection of the gear and equipment,

including the compressed gas machinery; compressed gas analysis; appropriate records; constant quality assurance review and supervision of the staff; and a requirement that only qualified, trained, certified personnel and properly equipped staff competent to make necessary rescue efforts would accompany participants during diving excursions. For every excursion, it was mandatory that workable and functioning emergency equipment be available which included an emergency air supply system, a first aid kit, an oxygen kit, an automatic external defibrillator, a backboard, a walkie talkie, two-way radio, or cell phone for contacting emergency personnel, and a contact list of local emergency services.

69.     On information and belief, PADI entered into a contract and financial agreement with AMBERGRIS, subjecting AMBERGRIS to its control and requiring AMBERGRIS to abide by PADI operating and safety procedures.

## IX.    CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Wrongful Death**
**Pursuant to the General Maritime Law and DOHSA**
***Against Defendants***
***PADI WORLDWIDE CORP., PADI AMERICAS, INC.,***
***AMBERGRIS DIVERS, and DOES 1 through 5, inclusive***

70.     Plaintiff incorporates and re-alleges the allegations of Paragraphs 1 through 69 as fully as if set forth herein.

71.     At all material times hereto, Mr. HUGHES exercised reasonable care for his safety while on board the AMBERGRIS vessel and in the water.

72.     At all relevant times, Defendants owed a duty to exercise ordinary care to prevent foreseeable injury. Defendants' wrongful acts, omissions, breaches of

duty, and negligence proximately caused Mr. HUGHES to suffer catastrophic injury and a gruesome death. Mr. HUGHES' death caused injury and damages to his surviving beneficiaries. Plaintiff suffered severe and horrific emotional distress and economic losses, including, without limitation, the loss of her husband's services.

73.    Mr. HUGHES' injuries and death were caused by the negligent, grossly negligent and willful and wanton failures, omissions and practices and procedures within the exclusive control, management, privity and knowledge of the Defendants.

74.    Scuba diving excursions such as provided by the Defendants, do not cause death unless performed in a negligent, grossly negligent and/or willful and wanton manner, well below the applicable standard of care.

75.    Defendants' conduct, including (but not limited to)

    a.  product design and warning flaws identified herein;

    b.  failures to protect Mr. HUGHES;

    c.  provision of scuba tanks containing compressed air and/or nitrox product contaminated with carbon monoxide; and

    d.  lack of attention to safety and operation of the compressed gas machinery, tanks, and equipment

constituted wrongful acts causing Mr. HUGHES' death for which Defendants are responsible.

76.    At all times material, Defendants owed and/or voluntarily undertook, in exchange for payment by Mr. HUGHES, and assumed duties to Mr. HUGHES and negligently, grossly negligently and willfully and wantonly misrepresented as material fact to Mr. HUGHES that they would:

a. Provide proper scuba, medical and other related screening, training, instruction, direct supervision, direct control, and, if necessary, rescue and/or assistance, and first aid to Mr. HUGHES;

b. Provide a dive boat which was sufficiently manned, maintained, equipped and properly operated for scuba diving, and, if necessary, rescue and/or assistance, and first aid;

c. Provide safe dive boat services, including, without limitation, proper vessel navigation, selection of appropriate dive locations and transport to, from, and during the scuba dive in question;

d. Provide properly working and maintained diving equipment and vessels;

e. Properly follow all applicable industry standards and procedures related to vessel operation, scuba instruction, rescue and/or assistance and first aid; and

f. Warn of the dangerous conditions created by their negligent, grossly negligent and willful and wanton breaches of the above duties.

77.    Defendants made said negligent and grossly negligent misrepresentations of material facts in its/their business and/or individual capacity with the intent to induce reliance upon such representations.

78.    Mr. HUGHES justifiably and reasonably relied upon the aforesaid negligent and grossly negligent misrepresentations of material facts.

79.    At all times material, it was foreseeable that a negligent, grossly negligent and willful and wanton breach of the aforementioned duties, including, without limitation, breach of standards and procedures resulting in a lethal CO contamination, would create a zone of risk, unnecessary danger and an increased risk of harm and death to Mr. HUGHES.

80.    As a direct and proximate result of the breach of the aforementioned duties and negligent and grossly negligent acts and/or omissions of Defendants, Mr. HUGHES foreseeably experienced conscious pain and suffering, pre-death terror, and (ultimately) death.

81.    Further, as a direct and proximate result of the above-described incident and resulting death of Mr. HUGHES, Mr. HUGHES' estate and its survivors suffered damages as follows:

a.    JANEEN HUGHES, as Personal Representative of the Estate of ROBERT MONROE HUGHES, is entitled to recover the loss of net accumulations beyond the date of death, loss of future earnings, loss of future earning capacity, loss of services and funeral expenses due to Mr. HUGHES' death and any other damages allowable under the law; and

b.    JANEEN HUGHES, as wife of Mr. HUGHES, has suffered in the past and will continue to suffer loss of financial support and

services, society, nurture, love, and affection as a result of Mr. HUGHES' death.

82. WHEREFORE, Plaintiff prays for judgment against Defendants individually and jointly and severally in an amount which will fully compensate Plaintiff for the injuries, losses and damages sustained which are described herein along with all other damages allowed by law and/or equity.

**SECOND CAUSE OF ACTION**
**Negligence**
***Against Defendants***
***PADI WORLDWIDE CORP., PADI AMERICAS, INC., AMBERGRIS DIVERS, and DOES 6 through 10, inclusive***

83. Plaintiff incorporates and re-alleges the allegations of Paragraphs 1 through 82 as fully as if set forth herein.

84. On or about June 14, 2024, Mr. HUGHES, while participating in scuba diving excursion offered, operated, overseen and provided solely by the Defendants in a negligent, grossly negligent and in a willful and wanton manner, died in international waters offshore Belize.

85. Under maritime law, the vessel's Master is required to comply with regulations specifically created to ensure the safety of passengers. His failure to do so constitutes negligence, gross negligence and willful and wanton behavior.

86. The vessel required qualified, trained, certified personnel and properly equipped staff competent to make necessary rescue efforts to accompany participants during diving excursions. For every excursion it was mandatory that workable and functioning emergency equipment be available which included an

emergency air supply system, a first aid kit, an oxygen kit, an automatic external defibrillator, a backboard, a walkie talkie, two-way radio, or cell phone for contacting emergency personnel, and a contact list of local emergency services. Such requirements were negligently and grossly negligently ignored.

87.    An autopsy was performed on Mr. HUGHES by the coroner in Belize. The cause of death was drowning caused by carbon monoxide toxicity.

88.    At all times material, Defendants were vicariously liable for the acts and omissions of the Master and the vessel crew.

89.    At all times material, Defendants owed Mr. HUGHES a duty of reasonable care.

90.    Mr. HUGHES' injuries and death were foreseeable and caused by the negligent and grossly negligent failures, omissions and practices and procedures within the exclusive control and management of Defendants.

91.    The actions performed by Defendants, specifically scuba diving excursions, do not cause death unless performed in a negligently and grossly negligent willful and wanton manner and well below the applicable standard of care.

92.    At all material times, PADI, AMBERGRIS, and DOES 6 through 10, inclusive, through their agents, servants and/or employees, owed and/or voluntarily undertook, in exchange for payment by Mr. HUGHES, and assumed duties to Mr. HUGHES. These duties included (but were not necessarily limited to):

    a.  Provide a dive vessel which was sufficiently manned, maintained, operated and/or equipped;

b. Properly service and maintain the air and/or nitrox compressors, filters, storage tanks and related equipment at AMBERGRIS, a PADI 5 Star facility, and DOES 6 through 10, inclusive;

c. Properly test the air and/or nitrox compressors, filters, storage tanks, gas, and related equipment at AMBERGRIS, a PADI 5 Star facility, and DOES 6 through 10, inclusive;

d. Properly train and/or supervise their agents, servants and/or employees who were involved in the operation of the air and/or nitrox compressors, filters, storage tanks and gas testing, and related equipment at AMBERGRIS, a PADI 5 Star facility, and DOES 6 through 10, inclusive;

e. Ensure the purity and non-contamination of the compressed air and/or nitrox product manufactured at AMBERGRIS, a PADI 5 Star facility, and DOES 6 through 10, inclusive;

f. Provide proper scuba diving training, guidance, equipment, air and/or nitrox products, tanks, instruction and/or supervision;

g. Provide safe dive vessel services, passage and transportation to, from and during the scuba dive in question;

h. Provide appropriate surface and in-water support, supervision, as well as guidance, rescue and first aid; and/or

i. Warn of the dangerous conditions created by their breaches of the above duties.

93.    Defendants made negligent and grossly negligent misrepresentations of material facts in its/their business capacity with the intent to induce reliance upon such representations.

94.    Mr. HUGHES justifiably and reasonably relied upon the aforesaid negligent and grossly negligent misrepresentations of material facts made by Defendants.

95.    At all times material, it was foreseeable that the negligent and grossly negligent breach of the aforementioned duties, including, without limitation, breach of standards and procedures and navigational regulations, would create a zone of risk, unnecessary danger and an increased risk of harm to Mr. HUGHES and others, causing Mr. HUGHES' death.

96.    At all times material, the Defendants owed a duty to their passengers, including Mr. HUGHES, to use reasonable care under the circumstances in the operation and maintenance of their vessel and equipment.

97.    At all relevant times, this incident could have been prevented by the Defendants.  If Defendants had exercised reasonable care, Mr. HUGHES would not have died.

98.    Defendants owed to Mr. HUGHES duties of care to warn and/or protect him from the dangerous conditions caused by their negligent and grossly negligent acts and/or omissions.

99.    Defendants knew, or should have known, that its negligent, grossly negligent and willful and wanton failure to use reasonable care and follow proper safety protocols could result in serious injury or death to passengers.

PLAINTIFF'S ORIGINAL COMPLAINT
PAGE 31 OF 62

100.    Defendants, acting by and through their agents, servants and/or employees including the hired Master and vessel crew, negligently and grossly negligently breached their duties of care owed to Mr. HUGHES and failed to use reasonable care under the circumstances in the maintenance of their equipment.

101.    As a direct and proximate result, in whole or in part, of the aforesaid breaches of duties of care by Defendants, Mr. HUGHES was foreseeably killed.  As a result of Defendants' negligence, gross negligence and willful and wanton acts and/or omissions that proximately caused his death, Mr. HUGHES experienced pain and suffering and loss of income and his estate suffered a loss of net accumulations; JANEEN HUGHES incurred loss of consortium and loss of services; and Mr. HUGHES' children suffered loss of consortium, nurturing and support.

102.    PADI, AMBERGRIS, and DOES 6 through 10, inclusive, through their agents, servants and/or employees, breached the aforesaid duties by negligently, grossly negligently and willfully and wantonly committing (at least) one or more of the following negligent acts:

      a.  Failing to use reasonable care to properly and/or adequately:

          i.   train, instruct, guide and/or supervise Mr. HUGHES;

          ii.  monitor and/or analyze the mixed gas breathing mixtures, air and/or nitrox products, scuba diving gear configurations, and/or physical condition of Mr. HUGHES;

          iii. provide Mr. HUGHES with written materials;

          iv.  select  the location of the scuba dive in question;

          v.   execute the scuba dive in question;

vi. coordinate and provide surface and in-water support, rescue, and first aid;

vii. provide guidance before and during the dive;

viii. promote, follow, and/or provide proper and/or adequate instruction on scuba diving policies and procedures;

ix. avoid promoting, following, and/or providing instruction on inadequate and/or unreasonably dangerous scuba diving policies and procedures;

x. promote, utilize, and/or provide instruction on scuba diving equipment including compressed air and/or nitrox products, which were not unreasonably dangerous;

xi. avoid promoting, utilizing, and/or providing instruction on inadequate and/or unreasonably dangerous scuba diving equipment including compressed air and/or nitrox products; and/or

xii. provide dive vessel services, passage and transportation to, from and during the scuba dive in question, which was not unreasonably dangerous.

b. Failing to provide a properly manned, maintained, equipped and operable vessel;

c. Failing to properly service and maintain the air and/or nitrox compressors, filters, related equipment and storage tanks at

AMBERGRIS, a PADI 5 Star facility, and DOES 6 through 10, inclusive;

d. Failing to properly monitor and test the air and/or nitrox compressors, filters, storage tanks, gas and related equipment at AMBERGRIS, a PADI 5 Star facility and DOES 6 through 10, inclusive;

e. Failing to properly train and/or supervise their agents, servants and/or employees who were involved in the operation of the air and/or nitrox compressors, filters, storage tanks, gas tanks and related equipment at AMBERGRIS, a PADI 5 Star facility, and DOES 6 through 10, inclusive;

f. Failing to ensure the purity and non-contamination of the compressed air and/or nitrox product manufactured at AMBERGRIS, a PADI 5 Star facility, and DOES 6 through 10, inclusive;

g. Failing to hire agents, servants and/or employees, instructors, divemasters and other staff who were sufficiently competent, adequately trained and/or properly qualified;

h. Failing to adequately investigate the educational, employment experience, ability and/or training of their agents, servants and/or employees, instructors, divemasters and other staff to determine their competence;

i.  Failing to ensure that their agents, servants and/or employees, instructors, divemasters and other staff were competent by virtue of their education, employment experience, abilities and/or training;

j.  Failing to train their agents, servants and/or employees, instructors, divemasters and other staff (to include PADI, AMBERGRIS and DOES 6 through 10, inclusive) to ensure they were sufficiently competent, adequately trained and/or properly qualified and/or equipped;

k.  Retaining agents, servants and/or employees, instructors, divemasters and other staff (to include PADI, AMBERGRIS and DOES 6 through 10, inclusive) after they knew or through the exercise of reasonable diligence should have known, they were not sufficiently competent, adequately trained, physically trained and/or properly qualified and/or equipped;

l.  Failing to use reasonable care to properly and/or adequately provide a manufactured compressed air and/or nitrox product which was not unreasonably dangerous; and/or

m. Failing to use reasonable care to warn of the dangerous conditions created by their breaches of the above duties.

103.  Mr. HUGHES at all times material hereto exercised reasonable care for his safety while on board the chartered vessel and during scuba diving activities.

104.  As a direct and proximate result of the breach of the aforementioned duties, Mr. HUGHES perished.

PLAINTIFF'S ORIGINAL COMPLAINT
PAGE 35 OF 62

105.   As a direct and proximate result of the breach of the aforementioned duties and negligent, grossly negligent and willful and wanton acts and/or omissions of Defendants, Mr. HUGHES experienced conscious pain and suffering as well as pre-death terror and death.

106.   Further, as a direct and proximate result of the above-described incident and foreseeable resulting death of Mr. HUGHES, Mr. HUGHES' estate and its survivors suffered damages as follows:

      a.   JANEEN HUGHES, as Personal Representative of the Estate of ROBERT MONROE HUGHES, is entitled to recover the loss of net accumulations beyond the date of death, loss of future earnings, loss of future earning capacity, loss of services and funeral expenses due to Mr. HUGHES' death and any other damages allowable under the law; and

      b.   JANEEN HUGHES, as wife of Mr. HUGHES, has suffered in the past and will continue to suffer loss of financial support and services, inheritance, society, nurture, love, and affection as a result of Mr. HUGHES' death.

107.   WHEREFORE, Plaintiff prays for judgment against Defendants individually and jointly and severally in an amount which will fully compensate Plaintiff for the injuries, losses and damages sustained which are described herein along with any and all other damages allowed by law and/or equity.

1

2

3

## THIRD CAUSE OF ACTION
### Negligence and Products Liability
#### *Against Defendants*
#### *PADI WORLDWIDE CORP., PADI AMERICAS, INC.,*
#### *AMBERGRIS DIVERS, and DOES 11 through 15, inclusive*

4     108.   Plaintiff incorporates and re-alleges the allegations of Paragraphs 1

5     through 107 as fully as if set forth herein.

6     109.   On or about June 14, 2024, PADI, AMBERGRIS, and DOES 11

7     through 15, inclusive, through their agents, servants and/or employees,

8     manufactured and distributed a compressed air and/or nitrox product (the "Product")

9     for sale to the general public.

10    110.   On or about June 14, 2024, Mr. HUGHES purchased the Product from

11    Defendants PADI, AMBERGRIS, and DOES 11 through 15, inclusive.

12    111.   At the time of his death, Mr. HUGHES was using the Product in the

13    manner and purpose for which it was intended.

14    112.   As the manufacturer and/or assembler of the Product, PADI,

15    AMBERGRIS, and DOES 11 through 15, inclusive, owed a duty to Mr. HUGHES

16    to manufacture, assemble, test, monitor and/or analyze the Product so that it would

17    be reasonably safe for its intended use.

18    113.   As the distributor of the Product, PADI, AMBERGRIS, and DOES 11

19    through 15, inclusive, owed a duty to Mr. HUGHES to make a reasonable inspection

20    and testing of the Product and to adequately warn Mr. HUGHES of the lethal

21    contamination defect.

22    114.   At the time Mr. HUGHES purchased the Product, PADI,

23    AMBERGRIS, and DOES 11 through 15, inclusive, through their agents, servants

24

25

and/or employees, knew (or, through the exercise of reasonable diligence, should have known) the Product contained a lethal contamination defect.

115.    PADI, AMBERGRIS, and DOES 11 through 15, inclusive, through their agents, servants and/or employees, breached the aforesaid duties by negligently failing to:

   a.  use reasonable care to manufacture, assemble, test, monitor and/or analyze the Product so that it would be reasonably safe for its intended use; and/or

   b.  adequately warn Mr. HUGHES of the lethal contamination defect.

116.    As a direct and proximate result of the aforementioned negligence of PADI, AMBERGRIS, and DOES 11 through 15, inclusive, the Product contained a lethal contamination defect that rendered it unsafe for its intended use.

117.    As a further direct and proximate result of the breach of the aforementioned duties, Mr. HUGHES perished.

118.    As a direct and proximate result of the breach of the aforementioned duties and negligent acts and/or omissions of Defendants, Mr. HUGHES experienced foreseeable conscious pain and suffering as well as pre-death terror and death.

119.    Further, as a direct and proximate result of the above-described incident and resulting death of Mr. HUGHES, Mr. HUGHES' estate and its survivors suffered damages as follows:

   a.  JANEEN HUGHES, as Personal Representative of the Estate of ROBERT MONROE HUGHES, is entitled to recover the loss of net

accumulations beyond the date of death, loss of future earnings, loss
of future earning capacity, loss of services and funeral expenses due
to Mr. HUGHES' death and any other damages allowable under the
law; and

b. JANEEN HUGHES, as wife of Mr. HUGHES, has suffered in the
past and will continue to suffer loss of financial support and
services, inheritance, society, nurture, love, and affection as a result
of Mr. HUGHES' death.

120.    WHEREFORE, Plaintiff prays for judgment against Defendants
individually and jointly and severally in an amount which will fully compensate
Plaintiff for the injuries, losses and damages sustained which are described herein
along with any and all other damages allowed by law and/or equity.

<div align="center">

**FOURTH CAUSE OF ACTION**
**Strict Products Liability**
***Against Defendants***
***PADI WORLDWIDE CORP., PADI AMERICAS, INC.,***
***AMBERGRIS DIVERS, and DOES 16 through 20, inclusive***

</div>

121.    Plaintiff incorporates and re-alleges the allegations of Paragraphs 1
through 120 as fully as if set forth herein.

122.    On or about June 14, 2024, PADI, AMBERGRIS, and DOES 16
through 20, inclusive, through their agents, servants and/or employees,
manufactured and distributed a compressed air and/or nitrox product (the "Product")
for sale to the general public.

123. On or about June 14, 2024, Mr. HUGHES purchased the Product from PADI, AMBERGRIS, and DOES 16 through 20, inclusive.

124. At the time Mr. HUGHES purchased the Product from PADI, AMBERGRIS, and DOES 16 through 20, inclusive, the Product contained an inherently defective condition which rendered it unreasonably dangerous to Mr. HUGHES for its intended use.

125. At the time of his death, Mr. HUGHES was using the Product in the manner and purpose for which it was intended, and without his having made any substantial changes to its condition.

126. At the time Mr. HUGHES purchased the Product, PADI, AMBERGRIS and DOES 16 through 20, inclusive, through their agents, servants and/or employees, sold it without monitoring or analysis with knowledge that the Product would be used without inspection for carbon monoxide contamination defects by Mr. HUGHES.

127. PADI, AMBERGRIS and DOES 16 through 20, inclusive, through their agents, servants and/or employees, having knowledge that the Product was likely to cause injury or death when used in the way it was intended, failed to give Mr. HUGHES adequate warning of the danger.

128. As a direct and proximate result of the breach of the aforementioned duties, Mr. HUGHES perished.

129. As a direct and proximate result of the breach of the aforementioned duties and negligent acts and/or omissions of Defendants, Mr. HUGHES

experienced foreseeable conscious pain and suffering as well as pre-death terror and death.

130. Further, as a direct and proximate result of the above-described incident and resulting death of Mr. HUGHES, Mr. HUGHES' estate and its survivors suffered damages as follows:

  a. JANEEN HUGHES, as Personal Representative of the Estate of ROBERT MONROE HUGHES, is entitled to recover the loss of net accumulations beyond the date of death, loss of future earnings, loss of future earning capacity, loss of services and funeral expenses due to Mr. HUGHES' death and any other damages allowable under the law; and

  b. JANEEN HUGHES, as wife of Mr. HUGHES, has suffered in the past and will continue to suffer loss of financial support and services, inheritance, society, nurture, love, and affection as a result of Mr. HUGHES' death.

131. WHEREFORE, Plaintiff prays for judgment against Defendants individually and jointly and severally in an amount which will fully compensate Plaintiff for the injuries, losses and damages sustained which are described herein along with any and all other damages allowed by law and/or equity.

1

2

3

## FIFTH CAUSE OF ACTION
### Strict Products Liability (Design Defect)
#### *Against Defendants*
*PADI WORLDWIDE CORP., PADI AMERICAS, INC.,*
*AMBERGRIS DIVERS, and DOES 21 through 25, inclusive*

4

5

132.    Plaintiff incorporates and re-alleges the allegations of Paragraphs 1 through 131 as fully as if set forth herein.

6

7

8

9

133.    On or about June 14, 2024, PADI, AMBERGRIS, and DOES 21 through 25, inclusive, through their agents, servants and/or employees, manufactured and distributed a compressed air and/or nitrox product (the "Product") for sale to the general public.

10

11

134.    On or about June 14, 2024, Mr. HUGHES purchased the Product from Defendants PADI, AMBERGRIS, and DOES 21 through 25, inclusive.

12

13

14

135.    The Product is tangible personal property designed by PADI, AMBERGRIS, and DOES 21 through 25, inclusive, and distributed commercially for use.

15

16

17

18

19

20

21

22

23

136.    **Part One—The Consumer Expectations Test**: Mr. HUGHES used the Product both as intended and in a reasonably foreseeable manner (*i.e.*, as part of a PADI, AMBERGRIS, and DOES 21 through 25, inclusive,) consistent with what a consumer would expect. No ordinary consumer would expect that, when the Product was used in the way PADI, AMBERGRIS, and DOES 21 through 25, inclusive, intended and in the manner that Mr. HUGHES actually used the Product, that injury or death would result. In fact, an ordinary consumer would expect that the Product would keep him or her alive. For these reasons, among others, under the Consumer Expectations Test, the Product and the diving excursion were defectively

24

25

designed. This defective design was a foreseeable substantial factor in causing and was the actual and proximate cause of Mr. HUGHES' death.

137. **Part Two—The Risk-Benefit Test**: The design of the Product contained defects including, but not limited to, the gas that PADI, AMBERGRIS, and DOES 21 through 25, inclusive, used in the tank; the failure of PADI, AMBERGRIS, and DOES 21 through 25, inclusive, to properly test, monitor, analyze and evaluate the gas used; the failure of PADI, AMBERGRIS, and DOES 21 through 25, inclusive, to use properly trained and competent employees to fill the tanks and analyze the gas; the failure of PADI, AMBERGRIS, and DOES 21 through 25, inclusive, to have trained, certified operators to ensure the Product would perform as designed and expected.

138. The risks of the Product during the PADI and AMBERGRIS excursion include grave dangers of injury and of death from these defects. A safer design/process exists and is the industry standard. Each of the elements of that safer design would be mechanically feasible, merely entail reasonable costs and not substantially affect the user's experience other than to prevent his/her death.

139. For these reasons, among others, under the Risk-Benefit Test, the Product and excursion were defectively designed. This defective design was a foreseeable substantial factor in causing and was the actual and proximate cause of Mr. HUGHES' death.

140. As a direct and proximate result of the breach of the aforementioned duties and negligent acts and/or omissions of Defendants, Mr. HUGHES experienced conscious pain and suffering as well as pre-death terror and death.

141.   Further, as a direct and proximate result of the above-described incident and resulting death of Mr. HUGHES, Mr. HUGHES' estate and its survivors suffered damages as follows:

    a.   JANEEN HUGHES, as Personal Representative of the Estate of ROBERT MONROE HUGHES, is entitled to recover the loss of net accumulations beyond the date of death, loss of future earnings, loss of future earning capacity, loss of services and funeral expenses due to Mr. HUGHES' death and any other damages allowable under the law; and

    b.   JANEEN HUGHES, as wife of Mr. HUGHES, has suffered in the past and will continue to suffer loss of financial support and services, inheritance, society, nurture, love, and affection as a result of Mr. HUGHES' death.

142.   WHEREFORE, Plaintiff prays for judgment against Defendants individually and jointly and severally in an amount which will fully compensate Plaintiff for the injuries, losses and damages sustained which are described herein along with any and all other damages allowed by law and/or equity.

## SIXTH CAUSE OF ACTION
### Strict Products Liability (Failure to Warn)
*Against Defendants*
***PADI WORLDWIDE CORP., PADI AMERICAS, INC.,***
***AMBERGRIS DIVERS, and DOES 26 through 30, inclusive***

143.   Plaintiff, JANEEN HUGHES, incorporates and re-alleges the allegations of Paragraphs 1 through 142 as fully as if set forth herein.

144.    On or about June 14, 2024, PADI, AMBERGRIS, and DOES 26 through 30, inclusive, through their agents, servants and/or employees, manufactured and distributed a compressed air and/or nitrox product (the "Product") for sale to the general public.

145.    On or about June 14, 2024, Mr. HUGHES purchased the Product from Defendants PADI, AMBERGRIS and DOES 26 through 30, inclusive.

146.    The use of the defective Product entails substantial dangers of injury or death when used in a reasonably foreseeable way that an ordinary consumer would not have recognized and/or would have assumed to have been eliminated with promises of safety and affirmations of their efficacy. PADI, AMBERGRIS and DOES 26 through 30, inclusive, utterly and completely failed to provide Mr. HUGHES with warnings about the dangers described above, or instruction and education on how to deal with exigencies that may arise during the excursion from the use of the Product. The Product and excursion were presented to Mr. HUGHES with promises of safety, lack of risk and ease of use for divers.

147.    The failure of PADI, AMBERGRIS and DOES 26 through 30, inclusive, to provide this adequate warning was a foreseeable substantial factor in causing and was the actual and proximate cause of Mr. HUGHES' death.

148.    As a direct and proximate result of the breach of the aforementioned duties and negligent acts and/or omissions of Defendants, Mr. HUGHES experienced conscious pain and suffering as well as pre-death terror and death.

149.    Further, as a direct and proximate result of the above-described incident and resulting death of Mr. HUGHES, Mr. HUGHES' estate and its survivors suffered damages as follows:

a.    JANEEN HUGHES, as Personal Representative of the Estate of ROBERT MONROE HUGHES, is entitled to recover the loss of net accumulations beyond the date of death, loss of future earnings, loss of future earning capacity, loss of services and funeral expenses due to Mr. HUGHES' death and any other damages allowable under the law; and

b.    JANEEN HUGHES, as wife of Mr. HUGHES, has suffered in the past and will continue to suffer loss of financial support and services, inheritance, society, nurture, love, and affection as a result of Mr. HUGHES' death.

150.    WHEREFORE, Plaintiff prays for judgment against Defendants individually and jointly and severally in an amount which will fully compensate Plaintiff for the injuries, losses and damages sustained which are described herein along with any and all other damages allowed by law and/or equity.

## SEVENTH CAUSE OF ACTION
### Negligent Products Liability (Design Defect)
### *Against Defendants*
### *PADI WORLDWIDE CORP., PADI AMERICAS, INC.,*
### *AMBERGRIS DIVERS, and DOES 31 through 35, inclusive*

151.    Plaintiff incorporates and re-alleges the allegations of Paragraphs 1 through 150 as fully as if set forth herein.

1    152.   On or about June 14, 2024, PADI, AMBERGRIS, and DOES 31

2    through 35, inclusive, through their agents, servants and/or employees,

3    manufactured and distributed a compressed air and/or nitrox product (the "Product")

4    for sale to the general public.

5    153.   On or about June 14, 2024, Mr. HUGHES purchased the Product from

6    Defendants PADI, AMBERGRIS, and DOES 31 through 35, inclusive.

7    154.   In designing and supplying users like Mr. HUGHES the Product and

8    excursion, PADI, AMBERGRIS, and DOES 31 through 35, inclusive, ignored the

9    possibility of safer designs, processes and warnings as described above which they

10   knew or should have known were feasible, would entail reasonable costs, and would

11   not have affected the user's experience other than to prevent the user's death.

12   155.   The failure of PADI, AMBERGRIS, and DOES 31 through 35,

13   inclusive, to act as reasonably careful manufacturers, designers and suppliers would

14   have was a foreseeable substantial factor in causing and was the actual and proximate

15   cause of Mr. HUGHES' death.

16   156.   As a direct and proximate result of the breach of the aforementioned

17   duties and negligent acts and/or omissions of Defendants, Mr. HUGHES

18   experienced conscious pain and suffering as well as pre-death terror and death.

19   157.   Further, as a direct and proximate result of the above-described incident

20   and resulting death of Mr. HUGHES, Mr. HUGHES' estate and its survivors

21   suffered damages as follows:

22        a.  JANEEN HUGHES, as Personal Representative of the Estate of

23             ROBERT MONROE HUGHES, is entitled to recover the loss of net

24

25

accumulations beyond the date of death, loss of future earnings, loss of future earning capacity, loss of services and funeral expenses due to Mr. HUGHES' death and any other damages allowable under the law; and

b. JANEEN HUGHES, as wife of MR. HUGHES, has suffered in the past and will continue to suffer loss of financial support and services, inheritance, society, nurture, love, and affection as a result of Mr. HUGHES' death.

158.    WHEREFORE, Plaintiff prays for judgment against Defendants individually and jointly and severally in an amount which will fully compensate Plaintiff for the injuries, losses and damages sustained which are described herein along with any and all other damages allowed by law and/or equity.

## EIGHTH CAUSE OF ACTION
### Negligent Products Liability (Failure to Warn)
### *Against Defendants*
### *PADI WORLDWIDE CORP., PADI AMERICAS, INC.,*
### *AMBERGRIS DIVERS, and DOES 36 through 40, inclusive*

159.    Plaintiff incorporates and re-alleges the allegations of Paragraphs 1 through 158 as fully as if set forth herein.

160.    On or about June 14, 2024, PADI, AMBERGRIS, and DOES 36 through 40, inclusive, through their agents, servants and/or employees, manufactured and distributed a compressed air and/or product (the "Product") for sale to the general public.

161.   On or about June 14, 2024, Mr. HUGHES purchased the Product from Defendants PADI, AMBERGRIS, and DOES 36 through 40, inclusive.

162.   PADI, AMBERGRIS, and DOES 36 through 40, inclusive, knew or reasonably should have known that the Product was dangerous when used by diving excursion participants and that users such as Mr. HUGHES, having been reassured of the safety of the Product, would not recognize that danger.  Carbon monoxide is toxic, odorless, tasteless and not visible.

163.   A reasonable manufacturer, designer, or supplier under similar circumstances would have warned users of the danger.  PADI, AMBERGRIS, and DOES 36 through 40, inclusive, completely failed to adequately warn of the dangers.

164.   The failure of PADI, AMBERGRIS, and DOES 36 through 40, inclusive, to act as reasonably careful manufacturers, designers and suppliers was a foreseeable substantial factor in causing and was the actual and proximate cause of Mr. HUGHES' death.

165.   As a direct and proximate result of the breach of the aforementioned duties and negligent acts and/or omissions of Defendants, Mr. HUGHES experienced conscious pain and suffering as well as pre-death terror and death.

166.   Further, as a direct and proximate result of the above-described incident and resulting death of Mr. HUGHES, Mr. HUGHES' estate and its survivors suffered damages as follows:

a. JANEEN HUGHES, as Personal Representative of the Estate of ROBERT MONROE HUGHES, is entitled to recover the loss of net accumulations beyond the date of death, loss of future earnings, loss

of future earning capacity, loss of services and funeral expenses due to Mr. HUGHES' death and any other damages allowable under the law; and

b. JANEEN HUGHES, as wife of Mr. HUGHES, has suffered in the past and will continue to suffer loss of financial support and services, inheritance, society, nurture, love, and affection as a result of Mr. HUGHES' death.

167.    WHEREFORE, Plaintiff prays for judgment against Defendants individually and jointly and severally in an amount which will fully compensate Plaintiff for the injuries, losses and damages sustained which are described herein along with any and all other damages allowed by law and/or equity.

### NINTH CAUSE OF ACTION
**Breach of Implied Warranty of Merchantability**
***Against Defendants***
***PADI WORLDWIDE CORP., PADI AMERICAS, INC.,***
***AMBERGRIS DIVERS, and DOES 41 through 45, inclusive***

168.    Plaintiff incorporates and re-alleges the allegations of Paragraphs 1 through 167 as fully as if set forth herein.

169.    On or about June 14, 2024, Mr. HUGHES purchased a manufactured compressed air and/or nitrox product (the "Product") from PADI, AMBERGRIS, and DOES 41 through 45, inclusive.

170.    As a merchant with respect to goods of the kind described herein, PADI, AMBERGRIS, and DOES 41 through 45, inclusive, impliedly warranted that

the Product was merchantable and suitable for the purpose for which it was intended; to wit, the intended recreational dive.

171.   In purchasing the Product, Mr. HUGHES relied upon the implied warranty of merchantability given by PADI, AMBERGRIS, and DOES 41 through 45, inclusive.

172.   PADI, AMBERGRIS, and DOES 41 through 45, inclusive, through their agents, servants and/or employees, breached the implied warranty of merchantability in that the Product was not suitable for the purpose for which it was intended; to wit, the intended recreational dive.

173.   As a direct and proximate result of the breach of the aforementioned implied warranty of merchantability, Mr. HUGHES was foreseeably caused to perish.

174.   As a direct and proximate result of the breach of the aforementioned duties and negligent acts and/or omissions of Defendants, Mr. HUGHES experienced conscious pain and suffering as well as pre-death terror and death.

175.   Further, as a direct and proximate result of the above-described incident and resulting death of Mr. HUGHES, Mr. HUGHES' estate and its survivors suffered damages as follows:

      a.   JANEEN HUGHES, as Personal Representative of the Estate of ROBERT MONROE HUGHES, is entitled to recover the loss of net accumulations beyond the date of death, loss of future earnings, loss of future earning capacity, loss of services and funeral expenses due

to Mr. HUGHES' death and any other damages allowable under the
law; and

b. JANEEN HUGHES, as wife of Mr. HUGHES, has suffered in the
past and will continue to suffer loss of financial support and
services, inheritance, society, nurture, love, and affection as a result
of Mr. HUGHES' death.

176.  WHEREFORE, Plaintiff prays for judgment against Defendants
individually and jointly and severally in an amount which will fully compensate
Plaintiff for the injuries, losses and damages sustained which are described herein
along with any and all other damages allowed by law and/or equity.

## TENTH CAUSE OF ACTION
### Breach of Implied Warranty of Fitness
### *Against Defendants*
### *PADI WORLDWIDE CORP., PADI AMERICAS, INC.,*
### *AMBERGRIS DIVERS and DOES 46 through 50, inclusive*

177.  Plaintiff incorporates and re-alleges the allegations of Paragraphs 1
through 176 as fully as if set forth herein.

178.  On or about June 14, 2024, Mr. HUGHES purchased a manufactured
compressed air and/or nitrox product (the "Product") from PADI, AMBERGRIS,
and DOES 46 through 50, inclusive.

179.  In purchasing the Product, Mr. HUGHES relied upon the skill and
judgment of PADI, AMBERGRIS, and DOES 46 through 50, inclusive, in selecting
a Product suitable for the intended recreational dive.

180.  As a result of the matters alleged above, PADI, AMBERGRIS, and DOES 46 through 50, inclusive, through their agents, impliedly warranted that the Product would be suitable for the above purpose.

181.  PADI, AMBERGRIS, and DOES 46 through 50, inclusive, breached the implied warranty of fitness described above in that the Product was not suitable for the intended recreational dive.

182.  As a direct and proximate result of the breach of the aforementioned implied warranty of fitness for a particular purpose, Mr. HUGHES was foreseeably caused to perish.

183.  As a direct and proximate result of the breach of the aforementioned duties and negligent acts and/or omissions of Defendants, Mr. HUGHES experienced conscious pain and suffering as well as pre-death terror and death.

184.  Further, as a direct and proximate result of the above-described incident and resulting death of Mr. HUGHES, Mr. HUGHES' estate and its survivors suffered damages as follows:

   a.  JANEEN HUGHES, as Personal Representative of the Estate of ROBERT MONROE HUGHES, is entitled to recover the loss of net accumulations beyond the date of death, loss of future earnings, loss of future earning capacity, loss of services and funeral expenses due to Mr. HUGHES' death and any other damages allowable under the law; and

   b.  JANEEN HUGHES, as wife of Mr. HUGHES, has suffered in the past and will continue to suffer loss of financial support and

PLAINTIFF'S ORIGINAL COMPLAINT
PAGE 53 OF 62

services, inheritance, society, nurture, love, and affection as a result of Mr. HUGHES' death.

185.    WHEREFORE, Plaintiff prays for judgment against Defendants individually and jointly and severally in an amount which will fully compensate Plaintiff for the injuries, losses and damages sustained which are described herein along with any and all other damages allowed by law and/or equity.

## ELEVENTH CAUSE OF ACTION
### Negligent Misrepresentation
#### *Against Defendants*
#### *PADI WORLDWIDE CORP., PADI AMERICAS, INC., AMBERGRIS DIVERS, and DOES 51 through 55, inclusive*

186.    Plaintiff incorporates and re-alleges the allegations of Paragraphs 1 through 185 as fully as if set forth herein.

187.    At all material times, PADI, AMBERGRIS, and DOES 51 through 55, inclusive, through their agents, servants and/or employees, negligently misrepresented as material fact to Mr. HUGHES they would:

    a.  Provide proper scuba diving training, equipment, air and/or nitrox products, tanks, instruction, and/or supervision;

    b.  Provide scuba diving instructors, divemasters, and other staff who were sufficiently competent, adequately trained, physically capable, and/or properly qualified and/or equipped;

    c.  Provide scuba diving facilities, which were sufficiently staffed, maintained, and/or equipped;

d. Provide a dive vessel which was sufficiently manned, maintained, operated, and/or equipped;

e. Provide proper and adequate emergency supplies, including those needed to provide emergency assistance to an diver experiencing a medical emergency;

f. Provide safe dive vessel services, passages, and transportation to, from, and during the scuba dive in question;

g. Provide safe and proper surface and in-water support, supervision, guidance, rescue, and first aid; and

h. Warn of the dangerous conditions created by their breaches of the above duties.

188.    PADI, AMBERGRIS, and DOES 51 through 55, inclusive, through their agents, servants and/or employees, made said negligent misrepresentations of material fact in their business capacity with the intent to induce reliance upon such representations.

189.    Mr. HUGHES justifiably and reasonably relied upon the aforesaid negligent misrepresentations of material fact.

190.    PADI, AMBERGRIS, and DOES 51 through 55, inclusive, through their agents, servants and/or employees, made the aforesaid negligent misrepresentations of material fact which they knew, or through the exercise of reasonable diligence should have known, were false.

191.    As a direct and proximate result of the breach of the aforementioned duties, Mr. HUGHES perished.

192.   As a direct and proximate result of the breach of the aforementioned duties and negligent acts and/or omissions of Defendants, Mr. HUGHES experienced conscious pain and suffering as well as pre-death terror and death.

193.   Further, as a direct and proximate result of the above-described incident and resulting death of Mr. HUGHES, Mr. HUGHES' estate and its survivors suffered damages as follows:

     a.  JANEEN HUGHES, as Personal Representative of the Estate of ROBERT MONROE HUGHES, is entitled to recover the loss of net accumulations beyond the date of death, loss of future earnings, loss of future earning capacity, loss of services and funeral expenses due to Mr. HUGHES' death and any other damages allowable under the law; and

     b.  JANEEN HUGHES, as wife of Mr. HUGHES, has suffered in the past and will continue to suffer loss of financial support and services, inheritance, society, nurture, love, and affection as a result of Mr. HUGHES' death.

194.   WHEREFORE, Plaintiff prays for judgment against Defendants individually and jointly and severally in an amount which will fully compensate Plaintiff for the injuries, losses and damages sustained which are described herein along with any and all other damages allowed by law and/or equity.

## TWELFTH CAUSE OF ACTION
### Negligence
***Against Defendants PADI and DOES 56 through 60, inclusive***

195.   Plaintiff incorporates and re-alleges the allegations of Paragraphs 1 through 194 as fully as if set forth herein.

196.   At all material times, PADI and DOES 56 through 60, inclusive, through their agents, servants, and/or employees, owed and/or voluntarily undertook and assumed duties to Mr. HUGHES to:

  a. Promulgate, ensure compliance with and/or provide instruction on adequate scuba diving standards, policies and/or procedures and adequate procedures to ensure the purity of the air and/or nitrox product manufactured, packaged, marketed and sold by its facilities and the competence of their employees;

  b. Hire, train, and/or retain employees who were sufficiently competent, adequately trained and/or properly qualified and/or equipped;

  c. Certify, train and/or retain scuba diving instructors, divemasters, and staff who were sufficiently competent, adequately trained, physically capable and/or properly qualified and/or equipped;

  d. Certify and/or supervise facilities that were sufficiently competent, qualified and/or equipped;

e.  Implement and follow adequate quality control standards and procedures to ensure the competence of those it certified as instructors, divemasters, and staff and the facilities it certified; and

f.  Warn of the dangerous conditions created by their breaches of the above duties.

197.  At all times material, it was foreseeable that a breach of the aforementioned duties would create a zone of risk and a foreseeable increased risk of harm to Mr. HUGHES.

198.  PADI and DOES 56 through 60, inclusive, through their agents, servants and/or employees, breached the aforesaid duties by committing one or more of the following negligent acts:

a.  Failing to use reasonable care to:

i.  promulgate, ensure compliance with, and/or provide instruction on adequate scuba diving and gas purity/clean air and/or nitrox standards, policies and/or procedures and adequate procedures to ensure the purity of the air and/or nitrox product sold by its facilities and the competence of their employees;

ii.  ensure the compliance of its facilities with proper gas purity/clean air and/or nitrox policies and procedures;

iii.  develop and/or enforce a reasonable quality assurance or similar type of program to ensure that its 5 Star facilities were not unreasonably dangerous;

iv.  hire employees and/or utilize agents, servants and staff who were sufficiently competent, adequately trained, and/or properly qualified and/or equipped;

v.  train instructors, directors, and facility personnel, including agents, servants, and staff, to ensure they were sufficiently competent, adequately trained, and/or properly qualified and/or equipped;

vi.  train the diving instructors, divemasters, and facility personnel, including agents, servants and staff, it certified to ensure they were sufficiently competent, adequately trained and/or properly qualified and/or equipped;

vii.  certify instructors, divemasters, directors, and facility personnel, including agents, servants and staff, who were sufficiently competent, adequately trained, physically capable and/or properly qualified and/or equipped;

viii.  investigate the education, employment experience, ability, physical capabilities, and/or training of the instructors, divemasters, and facility personnel, including employees, agents, servants, and staff to determine their competence;

ix.  ensure its instructors, divemasters, directors, and facility personnel, including agents, servants and staff, were competent by virtue of their education, employment experience, ability, and/or training;

PLAINTIFF'S ORIGINAL COMPLAINT
PAGE 59 OF 62

x.   ensure the instructors, divemasters, and facility personnel, including agents, servants, and staff, it certified were competent by virtue of their education, employment experience, ability, physical capabilities, and/or training;

xi.   certify facilities that were sufficiently monitored, overseen, competent, qualified and/or equipped;

xii.   investigate, oversee and/or monitor the facilities it certified; and

xiii.   ensure that the facilities it certified were competent, qualified and/or equipped;

b.   Failing to use reasonable care by:

i.   promulgating and/or providing instruction on inadequate and/or unreasonably dangerous scuba diving standards, policies and/or procedures;

ii.   promoting and/or in certifying AMBERGRIS as a PADI 5 Star facility;

iii.   retaining instructors, divemasters, directors, and facility personnel, including agents, servants, and staff, after Defendants knew or, through the exercise of reasonable diligence, should have known that they were not sufficiently competent, adequately trained and/or properly qualified and/or equipped; and

iv.  retaining facilities it certified after it knew or, through the exercise of reasonable diligence, should have known that they were not sufficiently competent, qualified and/or equipped.

199.  As a direct and proximate result of the breach of the aforementioned duties, Mr. HUGHES perished.

200.  As a direct and proximate result of the breach of the aforementioned duties and negligent acts and/or omissions of Defendants, Mr. HUGHES experienced conscious pain and suffering as well as pre-death terror and death.

201.  Further, as a direct and proximate result of the above-described incident and resulting death of Mr. HUGHES, Mr. HUGHES' estate and its survivors suffered damages as follows:

a.  JANEEN HUGHES, as Personal Representative of the Estate of ROBERT MONROE HUGHES, is entitled to recover the loss of net accumulations beyond the date of death, loss of future earnings, loss of future earning capacity, loss of services and funeral expenses due to Mr. HUGHES' death and any other damages allowable under the law; and

b.  JANEEN HUGHES, as wife of Mr. HUGHES, has suffered in the past and will continue to suffer loss of financial support and services, inheritance, society, nurture, love, and affection as a result of Mr. HUGHES' death.

202.  WHEREFORE, Plaintiff prays for judgment against Defendants individually and jointly and severally in an amount which will fully compensate

Plaintiff for the injuries, losses and damages sustained which are described herein along with any and all other damages allowed by law and/or equity.

## X.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants PADI WORLDWIDE CORP., PADI AMERICAS, INC., AMBERGRIS DIVERS, and DOES 1 through 60, inclusive, individually and jointly and severally in an amount which will fully compensate Plaintiff for the injuries, losses and damages sustained which are described herein along with fees, costs and interest and any and all other damages allowed by law and/or equity, including pre-judgment interest allowed by law.

Respectfully submitted,

_____*/s/ Je Yon Jung*_____
Je Yon Jung

MAY JUNG, LLP
333 City Blvd. West, Suite 327
Orange, California 92868
818-869-6476 (direct)
202-618-8282 (fax)
jeyon@mayjung.com

*Attorney for Plaintiff Janeen Hughes*
*Additional Counsel to Be Added by Motion*